CONSTANCE MILLER FLYGARE, as Executrix under the Last Will and Testament of RALPH W. FLYGARE, Deceased,

*Plaintiff and Respondent,*

vs.

WALLACE M. BRUNDAGE,

*Defendant and Appellant.*

(No. 2745; October 30th, 1956; 302 Pac. (2d) 759)

352

For the defendant and appellant the cause was submitted upon the brief and also oral argument of J. Edward Amschel of Jackson, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of E. N. Moody of Jackson, Wyoming and Rex J. Hanson of Salt Lake City, Utah, and oral argument by Mr. Hanson.

354

## OPINION

Blume, Chief Justice.

This is an action for specific performnace of a contract brought by the plaintiff Ralph W. Flygare against the defendant Wallace M. Brundage on April 15, 1954. The parties will be referred to herein as in the court below.

The action involves a triangular piece of land in the NE¼NW¼ Sec. 22, T. 41 N., R. 116 W., 6th P. M., Teton county, Wyoming, a comparatively short distance north of Jackson, Wyoming, and fronting highway 89 and 187. The land was sold as though containing 13 acres of land, but actually contained only 7.93 acres as discovered after the abstract of title was delivered. Plaintiff sued to have defendant fulfill his contract as near as possible. We do not think it is necessary to set out the pleadings in this case except as hereinafter mentioned. The facts are clearly stated by the trial court in the findings of fact so that little needs to be added for the clear understanding of this case. The case was tried to the court without a jury. Judgment was entered for plaintiff on August 30, 1955. The trial court after finding generally for the plaintiff made the following findings of fact:

"1. That on or about the 7th day of January, 1953, plaintiff and defendant entered into negotiations for the sale by defendant of a tract of land located near the town of Jackson, Teton County, Wyoming, together with all water rights and appurtenances belonging thereto, which tract defendant ,first represented to the plaintiff embraced an area of approximately 15 acres, for which he asked a price of $15,000. That plaintiff agreed to pay $100 for an option, until March 1, 1953,

to buy said tract for the price aforesaid, the $100 to be credited on the purchase price if said option should be exercised. That the parties thereupon enlisted the services of attorney E. N. Moody of Jackson, who prepared said option, but before the preparation of the same the defendant stated and represented to the plaintiff that he was not sure that the tract of land he proposed to sell embraced quite 15 acres but that he was sure it contained approximately 13 acres.

"2. That plaintiff, notwithstanding said variance in the acreage as first represented by defendant, nevertheless agreed to take said option upon the express representation of the defendant that the tract did contain approximately 13 acres, and thereupon said option was signed by the parties and the $100 paid by the plaintiff. The court finds and decrees that the plaintiff relied upon said representation of the defendant as to the acreage and but for said representation would not have entered into said option agreement.

"3. That on February 28, 1953, plaintiff notified the defendant that he exercised the said option to purchase and the parties thereupon agreed to enter into a formal contract of sale and purchase whereby defendant would agree to furnish plaintiff with an abstract of title to said property and, upon approval of the title, plaintiff would pay for approximately 13 acres the total sum of $15,000. That they applied to attorney E. N. Moody to prepare for them such a contract and were informed by him that he did not have available a form of sale and purchase contract but would use a form designated 'Lease And Option', filled in to cover the terms of their agreement. That although both parties intended the document as a contract of sale and purchase, said instrument as signed by the parties contained provisions whereby plaintiff's option to purchase said property was extended to March 1, 1954, and plaintiff was given the right to take possession of said property as lessee for a term ending March 1, 1954, and to make improvements on said property. Said instrument also provided that plaintiff should pay as rental the sum

of $1,500 for the last six months of said term and $250 on or before the 10th day of each month, all of which said payments, together with the $100 already paid, were to be credited on the purchase price. Said agreement further provided that defendant would furnish plaintiff with an abstract of title for his examination. That pursuant to said agreement plaintiff paid on said purchase price said sum of $1,500 and monthly rentals aggregating an additional $1,500, or a total of $3,100.

"4. That in order to obtain a correct description of the property to be abstracted and conveyed to the plaintiff, defendant caused said property to be surveyed and the abstract of title showed that the area of the property to be conveyed to the plaintiff aggregated only 7.93 acres. That defendant did not obtain said abstract from the County Recorder's Office or deliver the same to the plaintiff, and plaintiff on or about the 1st day of July 1953, paid the abstractor's charge and obtained said abstract and thereupon first discovered the discrepancy in the acreage, that is to say, that instead of approximately 13 acres the area in the tract he was to acquire from the defendant was only 7.93 acres.

"5. That immediately upon making such discovery plaintiff contacted defendant and complained of said misrepresentation as to the area of said tract and then, and on subsequent dates, offered to either forego all rights under said 'Lease And Option' upon return to him of the payments made to the defendant or to pay the defendant the proprotionate part of the $15,000 which 7.93 bears to 13 acres, but defendant refused to accept either of said alternatives.

"6. That defendant refused to deliver a deed for 13 acres but in the month of August 1953 did make, sign and deliver to the Jackson State Bank a deed describing the tract to be conveyed by him as

'All that part of the Northeast Quarter of the Northwest Quarter of Section 22, Township 41 North, Range 116 West, 6th P. M. lying west of U .S. Highway 89 and 187.'

without designating the acreage, and authorized said Bank to deliver said deed to plaintiff on payment to the Bank for defendant the sum of $11,900. That plaintiff refused to accept said deed so offered by defendant.

"7. That under the 'Lease And Option' of February 27, 1953, plaintiff was authorized to make improvements on the property mentioned in said agreement, and at the time of the signing of said agreement and thereafter defendant well knew that plaintiff intended to purchase and was ready, able and willing to purchase said property for the aforesaid price offered by him and that defendant has no right to recover on his counterclaim herein.

"8. That the representation of the defendant that the area of said tract of land to be sold by defendant and purchased by plaintiff was approximately 13 acres, was a misrepresentation of a material fact and constituted a fraud upon the plaintiff ;that defendant knew, or should have known, that said tract had an area of only 7.93 acres, and the defendant being unable to convey approximately the 13 acres in the Northeast Quarter of the Northwest Quarter of Section 22, Township 41 North, Range 116 West, 6th P. M. lying west of U. S. Highway 89 and 187, and being able to convey only 7.93 acres within said 40 acre tract lying west of said highway, and defendant having refused to do equity by conveying to plaintiff said 7.93 acres for a just proportion of the price agreed to be paid for approximately 13 acres, and having refused to repay the plaintiff the amount paid by him on said purchase price, plaintiff is entitled to the relief prayed for in his petition herein, that is to say to a conveyance to him of said 7.93 acres upon the payment of the aforesaid price according to said acreage as stated in the next paragraph hereof.

"9. That defendant has received from the plaintiff, to be applied on the purchase price of said 7.93 acres, the sum of $3,100.

"It is therefore CONSIDERED, ORDERED, ADJUDGED and DECREED by the court that the plaintiff pay to the defendant the sum of $6,050 as the remainder of the purchase price for 7.93 acres here-

inafter particularly described, and that upon such payment being made defendant execute and deliver to plaintiff a warranty deed for said property. If defendant refuses to accept payment upon a tender thereof by plaintiff or to execute such deed within five days after such payment or tender, then this decree shall have the effect of such deed and shall operate in law and in equity as a conveyance whereby the title to said 7.93 acres shall vest in the plaintiff in fee simple." (Here follows the specific description of the land.)

There were improvements on the land at the time of the sale of the property, but the court failed to make any finding regarding these improvements, so we shall briefly set out the testimony in that connection. The witness Ick testified that the living quarters with bath were worth $4,000; a service station, $4,500; a little cabin, $500; pipes and cistern, $1,700; a total of $10,700. The witness Kranenberg did not testify as to the value of the pipes or cistern but testified that the value of the house and bath was from $4,500 to $5,000; the store building (service station), $4,000; the little cabin, $500; a total of $8,500 to $9,000. Testimony of the plaintiff in this connection was as follows:

"There are three log cabin buildings there, which were there in the beginning. As far as I could tell, in putting in new subfloors, I think we found newspapers in the buildings that date back 35 years, but the outward appearances were good and I consider the buildings good and valuable for a purpose. There is no purpose for me on that property and I would be glad to make it a matter of record in this Court that anybody that wants those buildings may come and have them, including Mr. Brundage or anybody else, for a payment of less than half of whatever the price given in this testimony yesterday of the buildings. So far as the pipe line from the spring to the reservoir, I consider it of no value whatsoever and when that

pipe line is replaced that pipe will be discarded on the spot and anybody may have it for carrying it away."

Counsel for plaintiff argue that the court erred in making any findings of fact, since no request was made therefor within the proper time, although counsel do not challenge the correctness of the court's findings of fact. Counsel call our attention to Cottonwood Sheep Co. v. Murphy, 48 Wyo. 250, 44 P.2d 1000, and other cases mentioned. It was held therein that a request for findings of fact and conclusions of law must be made before final submission of the case to the court, and that the court need not comply with a request made later. See § 3-2423 W.C.S. 1945 and cases cited thereunder. The foregoing cases are not in point. The fact that the court is not compelled to make findings does not mean that it may not do so. It may do so in its discretion. 89 C.J.S. § 610, p. 424; 64 C. J. 1228.

Counsel for defendant argues that the description of the property mentioned in the contract is too vague to comply with the statute of frauds. We see no merit in this contention.

It is somewhat difficult to determine from the brief of counsel for the defendant just what some of his remaining contentions are. It would not subserve any good purpose to follow his arguments categorically and we shall discuss only those matters which we deem of sufficient importance to deserve to be mentioned. In the main, aside from what will be said hereafter, his claims are as follows: He contends the petition was demurrable because the plaintiff failed to allege in his petition that he performed all the conditions of the contract on his part in accordance with the provisions of § 3-1413 W.C.S. 1945. Again he argues at great length that the contract was purely an option and the plaintiff was compelled to accept

it strictly according to the terms thereof, namely, by paying $15,000 less the amounts already paid. He cites 81 C.J.S. § 47, p. 528, and numerous other authorities. These two matters go hand in hand in the case at bar. They apply under the proper facts. They do not apply in the case at bar. The court found and the evidence shows that plaintiff exercised the option. He was ready to pay all the amount due from him when the abstract of title to the property, was delivered, which was not until July 1953. The duties of the parties were reciprocal. Defendant undertook to convey to plaintiff 13 acres of land contained in a certain tract of land. He did not and could not do so. Hence it goes without saying that plaintiff did not have to comply with his part of the contract. Of course, if plaintiff, in an action for specific performance, wanted the defendant to fulfill his part of the contract as far as possible, he, the plaintiff, was compelled to pay, not the amount specified in the contract, but only the amount which the law required him to pay under the actual facts in the case.

The deficiency in the acreage, that is to say that the tract of land involved herein contained only 7.93 acres, was not discovered by the plaintiff until July 1953 when the abstract of title was delivered. Plaintiff then stated to the defendant that the latter should adjust the matter within 10 days or he would sue. He did not bring his action until April 1954 and he continued to remain in possession of the property. Counsel for defendant contends (p. 15, brief) that while the plaintiff would have had a right of rescission he was not entitled to bring an action for specific performance. Counsel cites no authority. The law is that the plaintiff had the right either to rescind the contract or to sue for specific performance. Thus it is stated in 92 C.J.S § 543, pp. 537, 538, as follows:

"Where the vendor refuses or is unable to convey the entire amount of land which he contracted to sell, the purchaser may affirm the contract and enforce its specific performance as to the land which the vendor is able to convey, with a deduction from the purchase price for the deficiency, and damages for the breach of contract as to the part which the vendor is unable to convey, or he may bring an action at law for damages, in which action the vendor's liability may be based on his fraud and deceit in misrepresenting the quantity of land; or the purchaser may elect to rescind the contract and to sue at law to recover the purchase money paid, or he may bring an action in equity for the rescission of the contract and recovery of the purchase money paid, or to enjoin collection of the purchase money by the vendor."

We do not think plaintiff waived any right which he had by reason of the fact that he did not commence his action sooner or that he remained in possession of the property after discovering the deficiency in the acreage. Waiver implies among other things an intention to waive a right. 92 C.J.S. 1058. No such intention to waive any right has been shown herein. See Baylies v. Vanden Boom, 40 Wyo. 411, 278 P. 551.

There is no justification in the contention of counsel for plaintiff herein that the sale was for so much per acre. It was a sale of a tract of land with certain boundaries. In other words, it was, as is commonly said, a sale in gross. There was, however, a representation on the part of the vendor that the tract contained at least 13 acres of land. The evidence indicates there was no intentional fraud, for a map in the office of the county clerk indicated the acreage to be 12.8 acres. However, the quantity was actually misrepresented and the tract contained only 7.93 acres, a difference of something like 35 to 40 per cent. The

rule applicable in such case is considered in 92 C.J.S. § 266, p. 136, where it is stated:

"As a general rule, where the sale is in gross or of a tract or parcel as a whole without regard to its specific quantity, the purchaser, unless there is an express provision for a deduction or unless the vendor has guaranteed the number of acres, if there has been no fraud or mistake, is not entitled to an abatement in the purchase price because the quantity of the land is less than thought or estimated by the parties at the time of the sale. The reason usually assigned for this rule is that the purchaser, in such cases, is considered as getting the specific land that he contracted for, and must be deemed to have assumed the risk of a deficiency in quantity."

But there is apparently a great diversity of opinion on the subject, although it may be that there would be more or less harmony under a certain state of facts. In 92 C.J.S. § 266, p. 137, it is stated:

"Ordinarily, the size of the deficiency does not vary the application of the rule denying a right of abatement where the sale is in gross, unless, according to some authorities, the variation or deficiency from a quantity stated by way of description is so great as to cause the court to conclude that it was not within the probable contemplation of the parties, and to treat the case as one of fraud or mistake * * *. * * * In at least one jurisdiction a deficiency in excess of ten per cent of the total amount of land sold is usually considered sufficiently large to justify an abatement on the ground of fraud or mistake, while an abatement will generally not be granted for a deficiency which is less than ten per cent."

It is further stated that an abatement of the amount to be paid is given even when the misrepresentation is "innocent", and that this is true although the estimate or representation as to quantity is qualified to indicate that the quantity might be more or less. The same statement is found in 66 C.J. 1019, 1020, where

cases from some fifteen jurisdictions are cited. In Arnold v. Campbell, 265 Ky. 485, 97 S.W.2d 32, 33, the court stated:

"In the very nature of things the contract of sale in such a case is not conclusive. If it were, fraud in its obtention would never be available."
thus answering the argument of counsel for appellant that the contract cannot be contradicted or varied. The supreme court of Washington considered the rule above stated to be so firmly established that a lengthy comment was unnecessary. Thus that court in Hanson v. Tompkins, 2 Wash. 508, 27 P. 73, 74, stated:

"If the defendants relied upon the representations of the plaintiff, and were led to believe by such representation that lot 2 contained 36½ acres when in fact it only contained 26½ acres, and were induced by such representations to purchase said lot as a lot of 36½ acres, it makes no difference whether plaintiff knew such representations to be false or not, he is liable. If he knew the lot did not contain 36½ acres, and represented to defendants that it did, he would be guilty of fraud and deceit; but if he did not know it, and believed that the representations he made were true, and defendants, acting upon such representations, were damaged because it eventuated that they were not true, the liability of the plaintiff would be the same. In neither case will he be allowed to retain the benefit flowing from his misrepresentation. Mr. Justice Story thus states the rule: 'Whether a party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false.' 1 Story, Eq.Jur. § 193, and note."
See also Rackham v. Koch, 125 Wash. 451, 216 P. 835; Annotation, 33 A.L.R. 862-877, 1047, etc. In the case at bar the difference is so great that we

must conclude the vendee in this case is entitled to an abatement of the price.

When then is the measure of the abatement? The court allowed the plaintiff the proportion that 7.93 bears to 13. It figured the amount of abatement to be allowed should be approximately 5/13 of the total amount of $15,000 payable under the contract, as though the sale had been for so much per acre, and made no allowance whatever for any improvements, although the testimony for the defendant indicates the value of these improvements amounted to $10,700, and even the plaintiff's testimony indicates the value thereof was substantial. Counsel for defendant contends the court erred in this connection, and we think the contention is well taken. It may be these improvements do not exactly suit the purposes for which the plaintiff wants to use the property, but these purposes were not communicated to the defendant, so the value should be estimated as in any other case. If the tract had contained 13 acres, the plaintiff would have a greater frontage on the highway, but at the same time the property lying back of the highway, and of less value than that fronting the highway, would have been greater. It is stated in 48 Am. Jur. 125:

"The measure of abatement should be such portion of the purchase price as the relative value of the land lost bears to the purchase price of the whole tract." In 92 C.J.S. § 265, p. 135, it is stated:

"Unless the contract contains an express provision as to the amount to be deducted in case the vendor is unable to obtain title to all the land contracted to be sold, or unless the sale was at a stipulated price per acre, in which case the purchaser is entitled to an abatement at the stipulated price per acre for the number of acres to which the title fails, the amount of the abatement, in case of a partial failure of title,

is determined by the difference in value between the land contracted to be sold and the land actually conveyed, so that the amount to be deducted is such proportion of the whole purchase price as the value of the part, to which title fails, bears to the value of the whole tract, at the time of the purchase."
In 92 C.J.S. § 266, p. 138, it is stated:

"As a general rule the amount of the abatement or deduction, where the purchaser is entitled to an abatement because of a deficiency in quantity, is the value of the deficient land at the time of the sale. Usually this value is ascertained by taking the price fixed in the contract or conveyance.

\* \* \* \* \*

"While it has been held that if improvements on the land form only a small portion of the value of the entire tract sold, they should not be taken into consideration to cause a departure from the general rule that the abatement is to be according to the average price per acre of the whole land, ordinarily, where the title to the land carries with it valuable appurtenant privileges, or where the land contains valuable improvements, or the land is sold with shares of stock, of which the purchaser receives the full benefit, the abatement should be according to the average value per acre after deducting the value of the privileges, improvements, or stock. For this purpose the value of the improvements should be fixed as of the date of the sale in their condition at that time."

The case of Doctor v. Hellberg, 65 Wis. 415, 27 N.W. 176, 179, 180, involved a sale of 49 acres of land, with improvements, for the sum of $23,000. It appeared that the acreage was in fact 16½ acres less than represented. That was substantially a difference of one-third. The purchaser claimed the purchase price should be reduced in the same proportion. The claim was then exactly the same as was allowed by the trial court in this case. The supreme court of Wis-

consin held that the claim of the purchaser was not well founded, and stated in part:

"This court has held that in the absence of fraud, 'where the title fails to only a part of the land conveyed, the grantee may recover, in an action on the covenants of seizin and right to convey, or upon an agreement to convey such fractional part of the whole consideration paid as the value at the time of the purchase of the piece to which the title fails bears to the whole purchase price and interest thereon during the time he has been deprived of the use of such fractional part, but not exceeding six years.' Messer v. Oesterich, 52 Wis. 696; S.C. 10 N.W.Rep. 6; Bartlet v. Braunsdorf, 57 Wis. 3; S.C. 14 N.W. Rep. 869; Willson v. Willson, 57 Amer.Dec. 320.

"Assuming the plaintiffs' right to specific performance and abatement of price on account of deficiency, as claimed, still they would not be entitled to any more favorable rule than the one just indicated; that is, an abatement of such fractional part of the whole consideration to be paid as the value at the time of the purchase of the piece to which the title failed bears to the whole purchase price. It stands confessed that the buildings and improvements are all on the land owned by the defendant, and it would be unfair to presume, in the absence of any allegation of proportionate values, that the portion of the land not improved is of equal value per acre with that which is improved."

To illustrate, taking for convenience 8 acres instead of 7.93: If the improvements were worth $8,000, the amount of abatement would be 5/13 of $7,000 (the difference between $15,000, the purchase price, and $8,000) or approximately $2,700; if the improvements were worth $6,000, then the amount of the abatement would be 5/13 of $9,000 (the difference between $15,000, the purchase price and $6,000) or approximately $3,460. The sums already paid would, of course, be added.

The trial court did not decide the case pursuant to this rule. It did not find the value of the improvements. So the case must be partially reversed and sent back to the trial court so that it may determine the value of the improvements on the property at the time of the purchase and then deduct from the purchase price of $15,000 an amount in abatement according to the foregoing rule. In other respects the judgment of the trial court is affirmed.

Affirmed in part.

Reversed in part.

Harnsberger, J., and Parker, J., concur.