# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 17

OCTOBER TERM, A.D. 2020

January 29, 2021

JONTRA HOLDINGS PTY LTD, an
Australian registered company;
BRISBANE ANGELS NOMINEES
PTY LTD, an Australian registered
company; and ASSOCIATED
CONSTRUCTION EQUIPMENT
PTY LTD, an Australian registered
company,

Appellants
(Plaintiffs),

v.

GAS SENSING TECHNOLOGY
CORPORATION, a Wyoming
corporation d/b/a WELLDOG,

Appellee
(Defendant).

GAS SENSING TECHNOLOGY
CORPORATION, a Wyoming
corporation d/b/a WELLDOG,

Appellant
(Defendant),

v.

JONTRA HOLDINGS PTY LTD, an
Australian registered company;
BRISBANE ANGELS NOMINEES
PTY LTD, an Australian registered

S-20-0072, S-20-0073

**company; and ASSOCIATED
CONSTRUCTION EQUIPMENT
PTY LTD, an Australian registered
company,**

**Appellees
(Plaintiffs).**

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Jontra Holdings Pty Ltd; Brisbane Angels Nominees Pty Ltd; and Associated Construction Equipment Pty Ltd:*

> George E. Powers, Jr. and Noah S. Grovenstein of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming; Robert D. Comer and Mike Cross of Norton Rose Fulbright US LLP, Denver, Colorado.  Argument by Mr. Powers.

*Representing Gas Sensing Technology Corporation:*

> Philip A. Nicholas of Nicholas & Tangeman, LLC, Laramie, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS, Chief Justice**.

[¶1]   Plaintiffs Jontra Holdings Pty Ltd (Jontra), Brisbane Angels Nominees Pty Ltd (BAN), and Associated Construction Equipment Pty Ltd (ACE) are Australian investors. They sued Gas Sensing Technology Corporation (GSTC), a Wyoming-based oil and gas service company, for payment of loans they made to finance its operations in Australia. GSTC asserted numerous affirmative defenses and counterclaims, and the district court dismissed the counterclaims on grounds that they unduly complicated the action and were untimely filed.  After trial, a jury found that Plaintiffs had breached the implied covenant of good faith and fair dealing and therefore awarded no damages on their breach of contract claims.

[¶2]   Plaintiffs appealed the final judgments against them, and GSTC appealed the order dismissing its counterclaims and cross-appealed the final judgments.  Plaintiffs claim that numerous errors in the admission of evidence and the jury instructions resulted in an unfair trial, and that the district court erred in denying their motion for a new trial.  GSTC claims that the court erred in dismissing its counterclaims and in entering partial summary judgment against it.  Because we conclude that the court erred in dismissing GSTC's counterclaims, we reverse and remand and provide guidance regarding the admissibility of certain evidence.

## ISSUES

[¶3]   Plaintiffs' notice of appeal was docketed in this Court as No. S-20-0072, and GSTC's notice of appeal was docketed as No. S-20-0073.  In No. S-20-0072, Plaintiffs state the issues on appeal as follows:

> 1.      Did the Trial Court commit reversible error when it allowed GSTC to present hearsay evidence of statements by a third party in a separate action, in which [Plaintiffs] were not parties and had no opportunity to examine or cross-examine witnesses?
>
> 2.      Did the Trial Court commit reversible error by denying [Plaintiffs'] motion for a new trial despite GSTC failing to prove its purported defenses for breach of the implied covenant of good faith and fair dealing?
>
> 3.      Did the Trial Court commit reversible error when it allowed GSTC to present testimony, evidence, and argument in violation of pretrial orders, including the international conspiracy claim that relied upon inadmissible evidence implicating third-parties who were not before the court?

1

4.      Did the Trial Court fail to instruct the jury properly regarding issues on waiver, material breach and agency?

5.      Did the cumulative, unfair prejudice caused by the Trial Court's errors deprive [Plaintiffs] of their right to due process and a fair trial, mandating a new trial?

[¶4]    On cross-appeal in No. S-20-0072, GSTC presents two additional issues, which it states as follows:

1.      Did the Trial Court commit error when it ruled on partial summary judgment that there was no mutual mistake relating to the terms of the Jontra and ACE Finance Notes #3 regarding the obligation to make payments of principal?

2.      Did the Trial Court commit error in refusing to allow testimony of a conspiracy involving [Plaintiffs], John Mactaggart, Graeme Linklater and others?

[¶5]    In No. S-20-0073, GSTC states the issues on appeal as follows:

1.      Whether the District Court erred in dismissing all of [GSTC's] counterclaims?

2.      Whether the Court committed error in its failing to allow [GSTC's] counterclaims timely filed in federal court and filed five days late in state court?

[¶6]    Plaintiffs respond in No. S-20-0073 with the following additional issue:

1.      Can [GSTC] maintain an appeal from an order dismissing permissive counterclaims without prejudice, or must this Court dismiss the appeal for lack of an appealable order?

## FACTS

### I.      GSTC and the Promissory Notes

[¶7]    We recently decided another case in which two other creditors alleged that GSTC defaulted on loans they made to it. *See Gas Sensing Tech. Corp. v. New Horizon Ventures*

2

*Pty Ltd, as Trustee of the Linklater Family Trust*, 2020 WY 114, 471 P.3d 294 (Wyo. 2020) (*GSTC I*). In that case, we described GSTC's business as follows:

> John Pope founded GSTC in 2007 through an entity known as Blue Sky Group, Inc. GSTC is an oil and gas technical service company based in Laramie, Wyoming. It developed patented chemical sensing systems to provide commercial reservoir analysis services for coal, gas, alternative and conventional resources. GSTC provided equipment and services related to this technology to customers who used it to measure methane and carbon dioxide underground to locate coal bed methane wells. Initially, GSTC operated in the United States and Canada, particularly the Powder River Basin in Wyoming. Around 2010, GSTC decided to enter the Australian market and formed an Australian subsidiary called WellDog Proprietary Limited (WellDog).

*GSTC I*, ¶ 5, 471 P.3d at 296.

[¶8] To raise capital for the Australian expansion, GSTC and WellDog secured venture equity and debt financing from investors in the United States and Australia. Shell Technology Ventures, a venture capital arm of Shell Oil and Gas Company, was a primary United States investor. The two primary groups of investors from Australia were Plaintiffs Jontra, ACE, and BAN, of which John Mactaggart is a director, and ProX Pty Ltd and Kinabalu Australia Pty Ltd, with which Simon Ashton is associated.

[¶9] In July 2012, ACE loaned WellDog 500,000 Australian dollars to finance inventory and operating expenses. In November 2012, Jontra loaned WellDog 250,000 Australian dollars to finance its continuing growth and need for additional equipment. Both loans were for one-year terms. Although the ACE and Jontra notes were originally issued for one-year terms, they were extended annually until 2015.

[¶10] On July 14, 2014, ProX made three loans to WellDog. Promissory Note 1 was for $2,000,000 and had a maturity date of July 14, 2017. Promissory Note 2 was for $1,000,000 and had a maturity date of July 14, 2016. Promissory Note 3 was also for $1,000,000 and had a maturity date of July 14, 2015, which was at some point extended to July 14, 2016.

[¶11] In 2015, WellDog experienced substantial growth, and because it was a high-growth company, it required larger sums of cash on hand. GSTC therefore approached Mr. Mactaggart and asked that the ACE and Jontra notes be transferred to GSTC to allow WellDog access to other funding opportunities, and he agreed. On August 1, 2015, the outstanding balances on the ACE and Jontra notes were then transferred to GSTC, which

issued new notes in the amounts of $488,499.46 and $244,249.73, respectively. The maturity date for both notes was July 31, 2016.

[¶12] Also in 2015, GSTC issued two promissory notes to Plaintiff BAN. On October 26, 2015, it issued a promissory note to BAN for $47,500.00. The note commenced on November 12, 2015 and was to mature on November 11, 2016. On April 22, 2016, it issued a second promissory note to BAN, this one for $59,924.00. The second note commenced on May 1, 2016 and was to mature on May 1, 2017.[1]

[¶13] In 2015 and into 2016, Mr. Pope worked to secure investors that would provide sufficient capital to allow GSTC to retire its own debt as well as WellDog's debt, including WellDog's debt to ProX. His initial efforts fell through, but in 2016, he remained confident that he could raise the required funds, and he therefore negotiated an extension of ProX Notes 2 and 3, which were due to mature in July 2016, to allow additional time for fundraising. ProX agreed to extend the maturity date of Notes 2 and 3 to October 31, 2016, in exchange for WellDog's agreement to execute a general security agreement that would give ProX a security interest in WellDog.

[¶14] On July 14, 2016, WellDog and ProX signed an agreement, termed a deed of variance, that extended the maturity dates for ProX Notes 2 and 3 to October 31, 2016, subject to execution of the agreed-upon general security agreement. On July 21, 2016, Plaintiffs issued default notices to GSTC for its failure to make interest payments on their notes, which were due on July 1, 2016. For each note, the default notice demanded immediate payment of the unpaid principal and all accrued interest. However, on July 27, 2016, Mr. Mactaggart agreed to extend the maturity date of Plaintiffs' notes to October 31, 2016.

[¶15] On August 1, 2016, WellDog and ProX executed and signed the general security agreement, which gave ProX its security interest in WellDog. On August 5, 2016, Mr. Mactaggart withdrew his agreement to extend the maturity dates on Plaintiffs' notes and informed GSTC that Plaintiffs were assessing their options and would be in contact.

[¶16] GSTC asserts that Mr. Mactaggarts' actions were not an effort to simply enforce Plaintiffs' rights under their respective notes, but that they were instead designed to force GSTC and WellDog into financial crisis. It claims that Mr. Mactaggart, Mr. Ashton (of ProX and Kinabalu), and others conspired to gain ownership of WellDog by: 1) directly interfering with GSTC's fundraising; 2) luring WellDog into entering into the general security agreement with ProX; and 3) timing Plaintiffs' default notices to further

---

[1] Although both BAN notes identify the lender as "Brisbane Angels," Mr. Mactaggart testified that both debts were to BAN (Brisbane Angels Nominees), and both were extensions of loans BAN originally made to GSTC in 2013 and 2014.

undermine GSTC's ability to raise funds.  In *GSTC I*, we summarized the allegations as follows:

> According to Mr. Pope, WellDog generated approximately $22 million in revenue in 2016 making the company, by some accounts, worth $80 to $100 million. However, GSTC and WellDog were experiencing cash flow problems and needed to raise funds to pay their debts.

> GSTC claimed email communications between Mr. Mactaggart, Mr. Ashton, . . . and others showed a civil conspiracy to force GSTC and WellDog into financial crisis, leading to a "restructure" of the companies with the Australian investors gaining ownership of WellDog. GSTC claimed the co-conspirators interfered with its attempts to raise funds to solve its cash flow problems.

> One of the alleged steps in the Australian investors' plan involved derailing Shell Technology Ventures' investment in the company. By 2015, Shell had already invested $2 million in GSTC and was negotiating to purchase an additional $5 million in stock from the company. In the fall of 2015, Mr. Ashton, through Kinabalu, sold the same number of shares to Shell for $1.8 million, causing GSTC to lose the large investment from Shell. GSTC claimed Mr. Ashton improperly used information he gained as a director of GSTC to divert Shell's investment in the company, worsening the company's cash position.

> The next step in the alleged conspiracy to take over WellDog was to force GSTC and WellDog to default on its debts. One of WellDog's notes to ProX came due in July 2016. In order to secure an extension of the loan to October 31, 2016, WellDog gave ProX a general security interest over its assets. . . .

> GSTC and WellDog defaulted on debts owed to ProX, . . . and the Mactaggart companies. Because it held the general security interest, ProX was able, under Australian law, to appoint a receiver for WellDog. . . .

5

> WellDog's assets were eventually sold to eQnomics which operates as Qteq, another company controlled by Mr. Ashton.

*GSTC I*, ¶¶ 11-16, 471 P.3d at 297-98.[2]

## II.    Suit on the Notes

[¶17]  On March 6, 2017, Plaintiffs filed a complaint seeking to recover on their loans against GSTC in state district court.  GSTC moved for additional time to answer, and on March 24, 2017, the court issued an order allowing GSTC an extension of fifteen days to answer, up to and including April 11, 2017.  On April 6, 2017, GSTC filed a notice of removal to the United States District Court for the District of Wyoming, and on that same

---

[2] Among the others alleged to be involved in the alleged conspiracy were Campbell Smith, who is an associate of Simon Ashton, and Graeme Linklater. Mr. Linklater served in various capacities with GSTC and WellDog between 2012 and 2016.  In support of the claimed conspiracy, GSTC points in part to a number of emails between Mr. Mactaggart, Mr. Ashton, Mr. Smith, and Mr. Linklater, including those containing the following excerpts:

- August 5, 2016, from Mr. Smith to Mr. Mactaggart, with copies to Mr. Ashton and Mr. Linklater: "You will definitely be sending an email to 'The Pope' tomorrow post our teleconference and it will be measured and strategically aligned with our goal."

- August 6, 2016, from Mr. Ashton to Mr. Smith and Mr. Mactaggart, with a copy to Mr. Linklater: "This is all about pressure!! We need to build it gradually."

- August 7, 2016, from Mr. Smith to Mr. Mactaggart, with copies to Mr. Ashton and Mr. Linklater: "I think JP needs more time under pressure before Graeme or anyone offers him a solution. Hopefully he will get a cold reception at Tuesday's BA meeting and the GSTC Board will be getting nervous. He's only got $550k committed which won't last long let alone cover your $1m and ProX's $4m. We need him and the Board back in intensive care needing a miracle."

- August 7, 2016, from Mr. Linklater to Mr. Mactaggart and Mr. Smith, with a copy to Mr. Ashton, recounting a conversation he had with Mr. Pope: "JP has no inkling that I'm connected. Still working with me to get a solution and asking advise [sic] on how he should handle the situation," followed by, "My stance hasn't changed, stating that JM is acting independently and without my involvement."

- August 8, 2016, from Mr. Smith to Mr. Mactaggart, with a copy to Mr. Linklater and Mr. Ashton: "It's all about moving him towards the concept of getting rid of the Australian business, getting rid of Simon, fixing the US balance sheet so he can raise the equity capital to conquer the world [smiley face]."

- August 8, 2016, from Mr. Smith to Mr. Mactaggart: "I love it when a plan comes together??"

- August 9, 2016, from Mr. Mactaggart to Mr. Smith: "The heat is on."

date, it filed its answer and counterclaims in that court. On May 15, 2017, the federal court remanded the case back to state court.

[¶18] On May 26, 2017, Plaintiffs filed a notice of default and request for entry of default based on GSTC's failure to file an answer after the case was remanded back to state court. The clerk of district court issued an entry of default on that same date. On May 31, 2017, GSTC filed its answer, affirmative defenses, and counterclaims.[3] It asserted counterclaims for: 1) aiding and abetting wrongful acts of others; 2) insider transaction and conversion of corporate opportunity; 3) tortious interference with contract expectancy; 4) tortious interference with contract; 5) self-dealing and unjust enrichment; 6) civil conspiracies; 7) lender liability and breach of the covenant of good faith and fair dealing based in contract; 8) lender liability and breach of the covenant of good faith and fair dealing based in tort; 9) misappropriation of trade secrets, unfair business practices, and unfair competition; 10) negligent misrepresentation; 11) intentional/fraudulent misrepresentation; 12) declaratory relief; 13) wrongful acts injunction for calling notes unjustly; and 14) set off of damages against equity and debt.

[¶19] On May 31, 2017, GSTC filed a motion to allow its timely served answer and counterclaims and to set aside the default. Plaintiffs opposed GSTC's motion, and in the alternative moved to dismiss its counterclaims. They argued that GSTC's counterclaims were permissive, that the district court had discretion to refuse to allow them, and that the court should refuse to hear them because they would unnecessarily complicate the case.

[¶20] On July 14, 2017, the district court issued an order that set aside the entry of default, allowed GSTC to answer, and dismissed its counterclaims. The court found that GSTC's answer in federal court had no effect in the state proceedings, but that under W.R.C.P. 55(c), GSTC had shown good cause to set aside the default. As to the counterclaims, however, the court found that they were permissive and that they should be dismissed because they were not timely filed and would unduly complicate the case.

[¶21] On March 19, 2019, Plaintiffs moved for partial summary judgment, and on May 1, 2019, the district court granted the motion. In so ruling, the court found:

- the promissory notes were clear and unambiguous;

- parol evidence would not be admitted concerning the terms of the notes;

- the Jontra and ACE notes required monthly payments that were to include accrued interest and a $5,000.00 principal installment;

---

[3] GSTC's filing stated, "This is the same answer and counterclaim served upon Plaintiffs on April 6, 2017, and filed as Document Number 3 in Civil Action 2:17-CV-68-NF, in the United States District Court for the State of Wyoming upon notice of Removal in this matter."

7

- the inclusion of the $5,000.00 principal installment in the Jontra and ACE notes was not a mutual mistake;

- the BAN notes required monthly payments of accrued interest but no principal installments;

- none of the notes gave GSTC a right to cure a default;

- the notes entitled the lender to recover attorney fees and costs associated with collection as provided in the notes;

- the notes each contained a nonwaiver clause under which the lender may delay or forgo enforcement without losing its right to enforce;

- the notes each contained a merger and integration clause making the note the entirety of the parties' agreement;

- GSTC received valid consideration for each of the notes; and

- GSTC defaulted on each of the notes by failing to comply with the terms and conditions thereof.

[¶22] Plaintiffs filed a separate motion for summary judgment on GSTC's affirmative defense of breach of the implied covenant of good faith and fair dealing, and on May 1, 2019, the district court denied that motion. The court found that "[t]here are genuine issues of material fact as to whether Plaintiffs, individually and through associations with others, breached the implied covenant of good faith and fair dealing, which resulted in an interference with GSTC's ability to satisfy the contractual terms and which injured the rights of GSTC to receive the benefit of its agreements." The court concluded:

> At the end of the day, this case amounts to a simple note case, with a twist. Plaintiffs and GSTC clearly entered into valid and enforceable contracts, the terms of which are clear and ambiguous. GSTC failed to meet its payment obligations, as required, resulting in Plaintiffs declaring a default. The only real issue is whether GSTC will be able to prove to the jury that Plaintiffs breached the implied covenant of good faith and fair dealing in their respective contracts prior to GSTC's breach of contract, thereby resulting in an invocation of the "first to breach" rule, which would result in the conclusion that Plaintiffs, not GSTC, had breached the various contracts.

8

[¶23]   A ten-day jury trial was held from June 3 through June 14, 2019, on the questions of the damages owed to Plaintiffs and GSTC's affirmative defense of the breach of the implied covenant of good faith and fair dealing.  The jury returned a verdict in favor of GSTC on its affirmative defense, and it awarded no damages to Plaintiffs.  Plaintiffs filed a motion for a new trial pursuant to W.R.C.P. 59(a)(1), in which it argued that errors and irregularities during the trial unfairly and unduly prejudiced them and resulted in a verdict that was contrary to the evidence and the law.  On October 22, 2019, the district court issued an order denying Plaintiff's motion for a new trial.

[¶24]   Plaintiffs filed a timely notice of appeal to this Court.  GSTC then filed a notice of appeal from the district court's order dismissing its counterclaims, and a cross-appeal from the court's judgments on the jury verdict as to each Plaintiff.

## DISCUSSION

[¶25]   Because it affects other issues that the parties have raised on appeal, we will begin with GSTC's appeal from the order dismissing its counterclaims.[4]

## I.      Dismissal of GSTC's Counterclaims

[¶26]   The district court dismissed GSTC's counterclaims on two grounds: 1) that they unduly complicated the case; and 2) that they were not timely filed.  Whether the district court had discretion to dismiss GSTC's counterclaims depends on the scope of W.R.C.P. 13, which is a question of law that we review de novo.  *GSTC I*, ¶ 25, 471 P.3d at 299 (citing *Matter of Estate of Meeker*, 2017 WY 75, ¶ 8, 397 P.3d 183, 185 (Wyo. 2017)).  Whether the court erred in dismissing the counterclaims as untimely depends on the effect to be given GSTC's pleadings in federal court, which likewise presents a question of law that we review de novo.  *See Ayres v. Wiswall*, 112 U.S. 187, 189-91, 5 S.Ct. 90, 92, 28 L.Ed. 693 (1884) (state law determines legal effect to be given pleadings filed in federal court after removed case is remanded back to state court).

[¶27]   Before turning to our review of the district court's dismissal of GSTC's counterclaims, we will first address Plaintiffs' claim that this Court lacks jurisdiction to review the dismissal.  We will then address each ground the district court relied on to support its dismissal, followed by the additional bases Plaintiffs urge as grounds to affirm the decision.

---

[4] GSTC has appealed only the dismissal of six of its original fourteen counterclaims: 1) aiding and abetting the wrongful acts of others; 2) tortious interference with contract expectancy; 3) tortious interference with contract; 4) lender liability and breach of the covenant of good faith and fair dealing based in contract; 5) lender liability and breach of the covenant of good faith and fair dealing based in tort; and 6) setoff of damages against equity and debt.

## A.    Appealability of the Dismissal

[¶28]   Whether this Court has jurisdiction over an appeal is a question of law that we review de novo.  *Martin v. Hart*, 2018 WY 123, ¶ 17, 429 P.3d 56, 62 (Wyo. 2018) (citing *Inman v. Williams*, 2008 WY 81, ¶ 10, 187 P.3d 868, 874 (Wyo. 2008)).  Plaintiffs assert that because the counterclaims were dismissed without prejudice and can be refiled in a separate case, the dismissal was not a final appealable order under W.R.A.P. 1.05.  We disagree.

[¶29]   Rule 1.05 provides in relevant part that an appealable order is "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment."  W.R.A.P. 1.05(a).  We have held that an appealable order under Rule 1.05(a) has "three necessary characteristics. . . . It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues."  *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 31, 319 P.3d 116, 124 (Wyo. 2014) (quoting *In re E.R.C.K.*, 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo. 2013)).  "The more rigorous requirement of W.R.A.P. 1.05 . . . is that the order affects a 'substantial right.'"  *Woods v. State*, 2020 WY 118, ¶ 6, 471 P.3d 997, 998 (Wyo. 2020) (quoting *Uden v. State*, 2020 WY 109, ¶ 14, 470 P.3d. 560, 563 (Wyo. 2020)).

[¶30]   We have recognized that "[d]ismissals without prejudice often are considered non-final, and therefore non-appealable."  *Uden*, ¶ 13, 470 P.3d at 562 (footnote omitted).  We have also held, however, that when applying Rule 1.05, "we put substance (the effect the order has on the parties' rights) over form (without prejudice)."  *Id.* ¶ 13, 470 P.3d at 562-63 (citing *Stone v. Stone*, 842 P.2d 545, 548 (Wyo. 1992)).

[¶31]   In *GSTC I*, as in this case, the district court dismissed GSTC's counterclaims without prejudice on the ground that they unduly complicated the case.[5]  *GSTC I*, ¶¶ 33-34, 471 P.3d at 301.  In addressing the court's discretion to dismiss the counterclaims, we observed that "Rule 13(b) confers upon a litigant ***the right*** to have his permissive counterclaim heard and determined along with the claims of his adversary."  *Id*. ¶ 36, 471 P.3d at 302 (quoting *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1282 (D.C. Cir. 1973)) (emphasis added).  We further stated:

> Rule 13(b) allows the parties to assert their independent and unrelated counterclaims against one another "in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits." 6 Fed. Prac. & Proc. Civ. § 1420. The rule is intended to allow the "broadest possible joinder of permissive counterclaims." *Id*.

---

[5] The appealability of the order dismissing the counterclaims without prejudice was not raised in *GSTC I*.

10

*GSTC I*, ¶ 38, 471 P.3d at 302-03.

[¶32]   The dismissal of GSTC's counterclaims in this case deprived it of a substantial right, the right to have its own claims heard and determined in the same proceeding as those of its adversaries.  Given the nature of this right, the fact that the dismissal was without prejudice does not affect the order's finality.  The dismissal effectively "determine[d] the action and prevent[ed] a judgment" on GSTC's counterclaims within the present proceeding.  W.R.A.P. 1.05(a).  As another court has explained:

> Rules 13 and 14 are both intended to avoid circuity of action and to dispose of the entire subject matter arising from one set of facts in one action, thus administering complete and even handed justice expeditiously and economically. They are remedial and should be liberally construed. While both permit of some discretion on the part of the court, there must be sound reason for the exercise of such discretion to deny the relief made possible thereunder. ***And when the effect of the abuse of that discretion is the denial of that relief, and the relegating of the applicant therefor to a new and separate action, we think it is final as to the proceeding in which the relief is sought and denied.*** It follows that, under Rule 54(b), with the requisite determination that there is no just reason for delay in the entry of judgment disposing of the cross-claim, the judgment has appealable finality. ***So here, even though the judgment was not on the merits in that it purported to be without prejudice as to the ultimate rights as between the two defendants, it was final as far as this proceeding was concerned in that it deprived the Railroad of its right, recognized by Rule 13(g), to have its cross-claim against the Drill Company adjudicated in the same proceeding***.

*Blair v. Cleveland Twist Drill Co.*, 197 F.2d 842, 845 (7th Cir. 1952) (emphasis added).

[¶33]   In *Blair*, the trial court certified that there was no just reason for delay in the entry of judgment on the Rule 13 claim, and an immediate appeal was then taken.  *Blair*, 197 F.2d at 844.  In the absence of a Rule 54(b) certification, the dismissal of a counterclaim is properly appealed once a final judgment is entered.  *Ruppenthal v. State*, 849 P.2d 1316, 1318-19 (Wyo. 1993); *see also Gauer v. Klemetson*, 333 N.W.2d 436, 438-39 (N.D. 1983) (holding that dismissal of counterclaims was not immediately appealable but could be raised on appeal from final judgment); 6 Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1408 (3d ed. Oct. 2020 update) ("In general, the dismissal of either a compulsory or permissive counterclaim or a crossclaim, or the refusal to dismiss one of these claims is interlocutory and cannot be appealed in advance of the final judgment in the main action.  Once the main

11

claim has been adjudicated and a final judgment has been entered an appeal may be taken on the Rule 13 claim.") (footnote omitted).

[¶34] The district court entered final judgment on the jury verdicts for each Plaintiff, which fully determined the action. At that point, it was proper for GSTC to appeal the order dismissing its counterclaims, and this Court therefore has jurisdiction to review the dismissal.

## B.    Dismissal on Ground that Claims Unduly Complicated Case

[¶35]  As noted above, in *GSTC I*, the district court also dismissed GSTC's counterclaims on the ground that they unduly complicated the case. *GSTC I*, ¶ 1, 471 P.3d at 296. We held that the court erred in doing so. *Id.* ¶ 41, 471 P.3d at 303. We explained that "[b]y its plain terms, Rule 13 does not provide for dismissal of counterclaims simply because they would complicate the litigation." *Id.* ¶ 38, 471 P.3d at 303. We further explained:

> Furthermore, discretionary dismissal of claims under Rule 13 allows parties to make an end run around Rule 12. Rule 12(b) provides specific limited bases for dismissal of claims. Dismissal of claims as unduly complicated is not among them. Nothing in our rules of civil procedure allows a court to add unstated reasons for dismissal to Rule 12(b).

*GSTC I*, ¶ 40, 471 P.3d at 303.

[¶36]  For these same reasons, the district court erred in dismissing GSTC's claims in this case on the ground that they unduly complicated the case.[6]

## C.    Dismissal of Claims As Untimely

[¶37]  In dismissing GSTC's counterclaims as untimely, the district court rejected GSTC's argument that the answer it timely filed in federal court should be given effect in the state proceeding. The court reasoned:

> 37.    . . . The Wyoming Supreme Court has adopted the philosophy that the state's powers are tolled and suspended during the removal because removal to the federal court is automatic upon petition. *See Bland Drilling Co. v. Am. Indus., Inc.*, 435 P.2d 905, 909 (Wyo. 1968). Therefore, when the case returns to the state court on remand, "the state court [is] in the

---

[6] Because it does not affect resolution of this issue, we need not decide whether GSTC's counterclaims are compulsory or permissive.

12

same position as on the day of removal, and the motions of the parties in federal court are **not to be considered by the state court so as to relieve from default**." *Id*. (emphasis added).

38.   In accordance with precedent, this Court cannot recognize GSTC's *Answer, Affirmative Defenses and Counterclaim*, filed in federal court on April 6, 2017, to be a responsive pleading in conformity with Wyoming Rule of Civil Procedure 12(a) for this matter. Even though GSTC filed its *Answer, Affirmative Defenses and Counterclaim* in federal court and Plaintiffs were properly served with the pleading, such does not relieve the Defendant from default. Entry of default was proper.

[¶38]   We disagree that this Court has held that in the event of removal, pleadings filed in federal court are to be given no effect upon remand to state court. *Bland Drilling* involved an action brought against multiple defendants, which was then removed to federal court before two of the defendants filed responsive pleadings. *Bland Drilling Co. v. Am. Indus., Inc.*, 435 P.2d 905, 906-07 (Wyo. 1968).  The case was remanded back to state court after they both filed Rule 12 motions to dismiss. *Id.* at 907.  On remand, one of the defendants did not refile its Rule 12 motion in state court, and the plaintiff moved for entry of default against that defendant. *Id*.  The district court denied the motion, and the plaintiff appealed. *Id*.  On appeal, the plaintiff argued that the pleading in federal court should not have been given effect when the case was remanded to state court, and this Court rejected that as a basis to find an abuse of discretion.

Plaintiff urges that under the 1948 Act, Title 28, U.S.C.A. § 1446, removal to the federal court is automatic upon petition therefor, that the state's powers are tolled and suspended during the removal, that immediately upon the remand a cause returns to the state court in the same position as on the day of removal, and that the motions of the parties in federal court are not to be considered by the state court so as to relieve from default.

From our previous delineation of the filings herein, it will be apparent that should we adopt plaintiff's philosophy of the filing requirements in situations where there is removal and a subsequent remand and construe Rule 12, W.R.C.P., rigidly both American and the Dunham group would have been in technical default prior to the time that plaintiff attempted to take advantage of the situation. Nevertheless, the authorities cited by counsel do not go so far as to hold that under like

13

circumstances the entering of a default is proper, let alone mandatory. Moreover, plaintiff overlooks the well established rule that the issuance of a default judgment is within the discretion of the trial court. In *Westring v. Cheyenne National Bank*, Wyo., 393 P.2d 119, 122, we said that judgments by default are not favored, courts preferring that cases be tried upon the merits, and quoted with approval 1 Freeman on Judgments, p. 580 (5 ed.): It is generally recognized that the discretionary power of the court should be liberally exercised in furtherance of justice, to the end that cases may be disposed of upon their merits rather than upon technicalities or fortuitous circumstances. In the instant litigation, the trial court was well aware that the parties had been attempting in their various ways to present to the proper authority their legal problems, both American and the Dunham group having challenged jurisdiction because of another action allegedly involving the same issues in the Colorado federal district court. Accordingly, we find no basis here present to convince us that the trial court abused its discretion in overruling plaintiff's motion for default.

*Bland Drilling*, 435 P.2d at 909.

[¶39]   The Court in *Bland Drilling* did not hold that federal pleadings may not be given effect after a case is remanded back to state court, and we have not otherwise previously addressed the question of what effect they should be given.  *See Motzco Co. USA, LLC v. A & D Oilfield Dozers, Inc.*, 2014 WY 5, ¶ 14 n.2, 316 P.3d 1177, 1180 n.2 (Wyo. 2014) (noting conflicting authorities on question but declining to address it where appellant provided no cogent argument).  Now that the question is before us, we hold that when a matter is removed to federal court and then remanded back to state court, pleadings timely filed in federal court are to be given effect in the state proceeding.

[¶40]  The effect to be given pleadings filed in federal court after a removed case is remanded back to state court is a state court determination.  *Ayres*, 112 U.S. at 190-91, 5 S.Ct. at 92.  While a few state courts in early cases held that federal pleadings are not to be given effect in state proceedings, the more recent trend is to give them effect.  *See Swarey v. Stephenson*, 112 A.3d 534, 549 (Md. Ct. Spec. App. 2015) ("Over the last half-century, other state courts presented with this issue have routinely chosen to give full effect to pleadings filed in federal court prior to a remand to state court."); *State v. Hess Corp.*, 982 A.2d 388, 393 (N.H. 2009) ("Although state courts historically have refused to give such pleadings effect, *see Tracy Loan & Trust Co.* [*v. Mut. Life Ins.*], 7 P.2d [279] at 282 [(Utah 1932)], '[m]ore recently, state courts have given effect to pleadings filed in federal court prior to remand to state court.'"); *Crawford v. Morris Transp., Inc.*, 990 So.2d 162, 173

n.27 (Miss. 2008) ("The modern trend is to give effect to pleadings filed in federal court upon remand."); *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 889 P.2d 204, 207 (N.M. Ct. App. 1993) ("It is generally recognized that pleadings filed in federal court, while the federal court has jurisdiction, become part of the state court record on remand.").[7]

[¶41]   The courts that have adopted the majority rule cite solid policy considerations for their decision to give effect to federal pleadings on remand.  One court summarized them as follows:

> Several policy considerations support giving effect to pleadings filed in federal court before remand to state court. The first is judicial efficiency and economy. *Laguna Village*, 197 Cal.Rptr. 99, 672 P.2d at 886. A state court's acceptance of federal pleadings in such circumstances "avoid[s] the needless waste of time, effort and expense which would result from requiring counsel to duplicate in [state] court their actions . . . in the federal court." *Hansen*, 399 A.2d at 323. The second is fairness: giving effect to a federal court pleading is not unfair to an opposing party when that party has been fully apprised of the federal court proceedings and of the remand to state court. *See Laguna Village*, 197 Cal.Rptr. 99, 672 P.2d at 886. The third is the policy of avoiding forfeiture of claims and resolving

---

[7] *See also* Ark.R.Civ.P. 55(f) ("No judgment by default shall be entered against a party in an action removed to federal court and subsequently remanded if that party filed an answer or a motion permitted by Rule 12 in the federal court during removal."); Tex.R.Civ.P. 237a ("No default judgment shall be rendered against a party in a removed action remanded from federal court if that party filed an answer in federal court during removal."); *Rivet v. Regions Bank*, 838 So.2d 1290, 1294 (La. 2003) ("An answer timely filed in federal court [during removal] will be given effect in Louisiana courts."); *Banks v. Allstate Indem. Co.*, 757 N.E.2d 776, 777 (Ohio Ct. App. 2001) (answer filed in federal court given effect on remand back to state court); *Laguna Village, Inc. v. Laborers' Int'l. Union of N. Am., Local Union No. 652, AFL CIO*, 672 P.2d 882, 882 (Cal. 1983) ("[A] motion to dismiss, timely filed in federal court following removal of the case from state court and prior to remand, constitutes a responsive pleading to the state complaint."); *Teamsters Local 515 v. Roadbuilders, Inc.*, 291 S.E.2d 698, 701 (Ga. 1982) (timely answer filed in federal court following removal was sufficient to prevent a default in state court on remand); *Williams v. St. Joe Minerals Corp.*, 639 S.W.2d 192, 194-95 (Mo. Ct. App. 1982) (amended complaint filed in federal court was properly before state court on remand); *Edward Hansen, Inc. v. Kearny P.O. Assoc.*, 399 A.2d 319, 323 (N.J. Super. Ct. Ch. Div. 1979) (adopting the pleadings filed in federal court "as if they had originally been filed in [state] court"); *Citizens Nat'l Bank, Grant Cnty. v. First Nat'l Bank, Marion*, 331 N.E.2d 471, 476-77 (Ind. Ct. App. 1975) (following remand state court properly ruled on motion to dismiss filed in federal court); *Grone v. N. Ins. Co. of New York*, 130 A.2d 452, 453 (Pa. 1957) (answers filed after removal treated as part of record upon remand to state court); *but see Tracy Loan & Trust Co. v. Mutual Life Ins. Co. of New York*, 7 P.2d 279, 281-82 (Utah 1932) (pleadings not recognized by state court after remand for lack of federal jurisdiction); *Citizens' Light, Power & Tel. Co. v. Usnik*, 194 P. 862, 864 (N.M. 1921) (pleadings of no effect on remand to state court where federal court lacked jurisdiction).

them on the merits. *Id.*; *see Lewellyn v. Follansbee*, 94 N.H. 111, 114, 47 A.2d 572 (1946). The final policy is comity: "Most essentially, federal and state courts are complementary systems for administering justice in our Nation[;] [c]ooperation and comity, not competition and conflict are essential in the federal design." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

*Hess*, 982 A.2d at 393; *see also Swarey*, 112 A.3d at 551 ("Requiring re-service upon remand to the state court, in this case, would unnecessarily favor procedural form over substance, where there is no readily discernable prejudice to [the defendant]."); *Teamsters Local 515*, 291 S.E.2d at 700 ("logic, reasoning and comity" favor giving effect to pleadings timely filed in federal court).

[¶42] These policy considerations are in harmony with our own policies that favor resolving claims on their merits and encourage judicial economy. *See Loeffel v. Dash*, 2020 WY 96, ¶ 24, 468 P.3d 676, 682 (Wyo. 2020) ("This court has long recognized that 'default judgments are not favored in the law' and 'it is preferable that cases be tried on their merits.'") (quoting *Rosty v. Skaj*, 2012 WY 28, ¶ 29, 272 P.3d 947, 957 (Wyo. 2012)); *Interest of Bass*, 2020 WY 27, ¶ 5, 458 P.3d 857, 858 (Wyo. 2020) ("[I]t 'has always been the policy of our law to resolve doubts in favor of permitting parties to have their day in court on the merits of a controversy.'") (quoting *Dollarhide v. Bancroft*, 2008 WY 113, ¶¶ 10-11, 193 P.3d 223, 226 (Wyo. 2008)); *Windsor Energy Grp., LLC v. Noble Energy, Inc.*, 2014 WY 96, ¶ 22, 330 P.3d 285, 291 (Wyo. 2014) (rejecting position that "would frustrate our goal of securing the 'just, speedy, and inexpensive determination of every action'") (quoting W.R.C.P. 1). We thus conclude that the better rule is to give effect to timely-filed federal pleadings when a removed matter is remanded back to state court.[8]

---

[8] Cases adopting the alternative rule of disregarding federal pleadings in remanded cases, and the rationale for it, have largely been discredited. As one court explained:

> The older cases were decided when defendants acted at their peril by removing a case to federal court without protecting and preserving their rights under state rules of procedure. *Laguna Village*, 197 Cal.Rptr. 99, 672 P.2d at 885; *see Citizens' Light, Power & Telephone Co. v. Usnik*, 26 N.M. 494, 194 P. 862, 863 (1921); *Tracy Loan & Trust Co.*, 7 P.2d at 282. Since 1948, however, the federal removal statute has expressly prohibited any proceeding in state court after removal and before remand. *Laguna Village*, 197 Cal.Rptr. 99, 672 P.2d at 885. Under modern federal practice, once the removal petition is filed, "the state court loses jurisdiction and all further process must issue from the Federal court." *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962); *see Holmes v. AC & S, Inc.*, 388 F.Supp.2d 663, 667 (E.D.Va. 2004); *Laguna Village*, 197 Cal.Rptr. 99, 672 P.2d at 885.

16

[¶43] In this case, the record is clear, and the district court found, that GSTC timely filed its answer and counterclaims in federal court, and it properly served Plaintiffs with them. We therefore conclude that the court erred in failing to give effect to the pleading GSTC filed in federal court and in its dismissal of GSTC's counterclaims as untimely.[9]

## D.      Plaintiffs' Alternative Grounds in Support of Dismissal

[¶44] Plaintiffs offer alternative grounds in support of the district court's dismissal of GSTC's counterclaims, including: 1) the counterclaims require joinder of parties over whom the court cannot acquire jurisdiction; 2) the counterclaims allege no wrongdoing by Plaintiffs; 3) the counterclaims improperly rely on group pleading; and 4) the counterclaims are barred by the doctrine of collateral estoppel. Plaintiffs did not fully develop these grounds for dismissal in their motion to dismiss GSTC's counterclaims, to the extent they argued them at all, and the record contains no indication that the district court considered them. Because the district court has not had a meaningful opportunity to address these arguments, and particularly in light of GSTC's narrowed counterclaims, we will not address them and will instead leave them for the district court's consideration should Plaintiffs choose to assert them on remand. *See Davis v. State*, 2018 WY 40, ¶ 34, 415 P.3d 666, 678-79 (Wyo. 2018) (declining to address question without development at the district court); *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 35, 367 P.3d 619, 628 (Wyo. 2016) ("In order to preserve an issue for appeal, it must be called to the attention of the trial court in a 'clear or meaningful manner.'").

[¶45] For the above-stated reasons, we reverse the district court's order dismissing GSTC's counterclaims and remand for further proceedings consistent with this opinion.

---

*Hess*, 982 A.2d at 393; *see also Banks*, 757 N.E.2d at 778 ("There have been no cases since 1948 in which *Tracy Loan* or *Citizens' Light* have been followed.") (citations omitted). We also note that to the extent there are concerns that the rule we adopt may encourage a party to baselessly remove a matter to federal court for purposes of delay or any other improper purpose, we are satisfied that such concerns may be addressed through either W.R.C.P. 11 or F.R.C.P. 11.

[9] When the federal court remanded this case to the district court, it issued a certified copy of the remand order with an attached copy of the docket, which identified the filings in federal court. The district court thus had notice of the federal filings when the case was remanded, but it did not have copies of them. We defer to the district court in such circumstances to determine the extent to which copies of federal filings must be placed in its record and which party should be responsible for ensuring that the copies are so placed. *See* W.R.C.P. 83(b) ("A judge may regulate practice in any manner consistent with state law, rules, and the uniform rules."); *see also Banks*, 757 N.E.2d at 779 (where state trial court has notice of federal filing, "at that point, subject to whatever verification the trial court may deem appropriate, the trial court must give effect to that filing").

## II.     Admission of Graeme Linklater Testimony

[¶46]   Plaintiffs claim that the district court erred in admitting the prior trial testimony of Graeme Linklater.  Although we have determined that it is appropriate to reverse and remand, we address this issue to provide the court guidance on remand.  *Shull v. State*, 2017 WY 14, ¶ 52, 388 P.3d 763, 775 (Wyo. 2017), *overruled on other grounds by Schmuck v. State,* 2017 WY 140, 406 P.3d 286 (Wyo. 2017), (citing *Phillips v. State*, 597 P.2d 456, 463 (Wyo. 1979)).

## A.     Background

[¶47]   As we noted at the outset, we recently decided *GSTC I*, in which two other creditors alleged that GSTC defaulted on loans they made to it.  *GSTC I*, ¶ 1, 471 P.3d at 296.  In that case, the creditors were the Linklater Family Trust and the Meldrum Family Trust.  *Id.* It went to trial on May 6, 2019, and during the seven-day trial, Graeme Linklater testified at length.

[¶48]   On May 17, 2019, GSTC filed a supplement to its pretrial memorandum in this case. The supplement indicated that GSTC planned to obtain a transcript of Mr. Linklater's testimony, and that it planned to use it at the upcoming trial against Plaintiffs, which was scheduled to begin on June 3, 2019.  On that same day, GSTC filed a motion to continue the trial "to allow sufficient time to secure the Linklater Civil Action Transcripts, make appropriate motions, and allow the Court to address all issues relating to its rulings entered in this case that may require reconsideration and to allow full discovery."

[¶49]   On May 22, 2019, following a supplemental pretrial conference, the district court denied the motion to continue the trial.  It also addressed GSTC's motion to admit portions of Mr. Linklater's trial testimony.[10]  It ruled:

> 15.     Mr. Linklater is a citizen and resident of Australia and, as such, may well be unavailable to testify in this proceeding. Should that be the case, Mr. Linklater's testimony would not be considered hearsay if it falls under one of several hearsay exceptions, including [W.R.E. 804(b)(1) (Former Testimony), W.R.E. 804(b)(3) (Statement Against Interest)].
>
> 16.     Additionally, in some respects, Mr. Linklater may be deemed to have been acting in an agency capacity of one or more of the currently named Plaintiffs. In that respect, ["A

---

[10] The record contains no indication of a written motion to admit Mr. Linklater's testimony, and it likewise does not contain a transcript of the May 21, 2019 supplemental pretrial conference.  We assume that the motion was made orally during the pretrial conference.

statement is not hearsay if . . . offered against a party and is a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." W.R.E. 801(d)(2)(D)].

17.    Currently, this Court is unaware of the exact trial testimony that Defendant may seek to admit. Some may be irrelevant; some may well be relevant to the current proceedings.

18.    Accordingly, the Court will **RESERVE** ruling on the admissibility of Mr. Linklater's trial testimony . . . until such time as it can make a determination that the testimony is relevant and falls within an exception to the hearsay rule.

[¶50]  The transcript of Mr. Linklater's testimony was completed on May 31, 2019, and on the morning of the first day of trial, June 3, counsel for GSTC reported that they would designate the portions they intended to introduce by that evening.  On the afternoon of June 4, the district court held a hearing on the admissibility of the designated portions of the transcript.  Counsel for GSTC argued that the designated portions were admissible under W.R.C.P. 32 as the deposition testimony of an unavailable witness, and under W.R.E. 804(b)(1), as the prior trial testimony of an unavailable witness.  Concerning Mr. Linklater's availability, counsel argued:

> Mr. Linklater lives in Australia, so he's clearly absent from the state. We issued a trial subpoena to counsel for Mr. Mactaggart because we believe that Mr. Linklater is an agent of Mr. Mactaggart. He works for ABR Process, a company that's run by Mr. Mactaggart. He's a director of the Brisbane Angels with Mr. Mactaggart. We believe he's an agent of Mr. Mactaggart. And if they wanted him here in person, they could have procured his presence here.

[¶51]  Plaintiffs objected to admission of the testimony.  They argued that W.R.C.P. 32 was not applicable because the transcript was not deposition testimony.  They further argued that W.R.E. 804(b)(1) was not applicable because they were not parties to the earlier trial, Plaintiffs' counsel had no opportunity to cross-examine Mr. Linklater in the proceeding, and the parties to that case did not have a similar motive to cross-examine Mr. Linklater.  With respect to W.R.E. 801(d)(2)(D) (statement of an agent), which GSTC did not offer as a basis for admissibility, Plaintiffs argued that no evidence existed that Mr. Linklater was Plaintiffs' agent.

19

[¶52] The district court then addressed the admissibility of Mr. Linklater's prior testimony. It began:

> What I'd like to do now is give kind of the blanket ruling on the admissibility or lack thereof of the trial testimony. And then I understand there will be likely some specific objections to some of what was designated, so then we can turn our gears towards doing that.

[¶53] With respect to admissibility under W.R.C.P. 32, the court found that it applies to depositions only, and the prior trial testimony was therefore not admissible under that rule. With respect to admissibility under Rule 801(d)(2)(D), which excludes a statement made by a party's agent from the definition of hearsay, the court ruled:

> One of the issues before our jury will be to determine to what extent Mr. Linklater was acting as an agent or representative of Mr. Mactaggart with respect to the complexity of that relationship.
>
> And so while I won't make a decision at this point in time that there was an agency relationship, I think that it is appropriate for the jury to be presented testimony – and much of what Mr. Linklater says goes to that issue – testimony with respect to that relationship and what role Mr. Linklater was playing with respect to Mr. Mactaggart.
>
> So I think admission under Rule 801(d)(2) is appropriate.

[¶54] With respect to admissibility under Rule 804(b)(1), which provides an exception to the rule against hearsay for the prior trial testimony of an unavailable witness, the court ruled:

> I have to agree with [Plaintiffs' counsel] on this one, that I don't think we fit under former testimony as it was intended. I don't believe that Mr. Mactaggart had an opportunity or – and similar motive to develop the testimony. He was not a party to the previous lawsuit, and the fact that [Plaintiffs' counsel] was present in the courtroom I don't think meets the spirit or intent of that hearsay exception.

[¶55] The court then considered two additional exceptions to the rule against hearsay and found the testimony admissible under both.

. . . [T]he Court also looked at 804(b)(3), which is statement against interests. I think very clearly, much of what Mr. Linklater had to say was contrary to his pecuniary and proprietary interest, and tended to subject him to civil or criminal liability. Certainly, to the extent that a reasonable person in his position would not have made the statement unless he believed it to be true.

So I think that an exception under 804(b)(3) applies as well. And I understand I'm going out on a limb on this one, but I think it solidly applies here.

The catch-all exception under 804(b)(6), the statement is offered as evidence of a material fact, the statement is more probative on the point for which it is offered than any other evidence, which the proponent can procure through reasonable efforts, and the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence.

Under all the possibilities, Mr. Linklater is an unavailable witness. He is not somebody that Defendants can get to appear in person in these proceedings. And I solidly believe that his trial testimony meets that exception as well.

So for an overall umbrella, the Court will find that the trial testimony of Mr. Linklater is potentially admissible, but that is most certainly subject to other proper objections, the greatest of which most likely is going to be relevance.

[¶56]  The court then went through the designated portions of Mr. Linklater's testimony, section by section, for consideration of objections other than hearsay, for which the court recognized Plaintiffs' continuing objection.  The objections that the court then considered and ruled on were generally to relevance.

[¶57]  Over the course of the third day of trial and into the fourth, counsel for GSTC read approximately 250 pages of Mr. Linklater's prior testimony into the record.  Toward the end of day three, Plaintiffs' counsel argued that no agency had been shown between Mr. Linklater and Plaintiffs, and again objected to the testimony as impermissible hearsay.  The court responded that its prior ruling would stand.

21

## B.    Admissibility Under Hearsay Rules

[¶58]   Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  W.R.E. 801(c).  "Hearsay statements are generally inadmissible because they are made outside of court and, therefore, presumed to be unreliable."  *Bruce v. State*, 2015 WY 46, ¶ 40, 346 P.3d 909, 923 (Wyo. 2015) (quoting *Moore v. State*, 2013 WY 146, ¶ 11, 313 P.3d 505, 508 (Wyo. 2013)).  A hearsay statement is admissible, however, if it fits a recognized exception to the hearsay rule.  *Id*.  We review a district court's ruling on the admissibility of evidence, including hearsay, for an abuse of discretion.

> We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Farrow v. State*, 2019 WY 30, ¶ 52, 437 P.3d 809, 823 (Wyo. 2019). "We afford considerable deference to a trial court's rulings on the admissibility of evidence, and we will not disturb the trial court's ruling if there is a legitimate basis for it." *Id*. "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Moser v. State*, 2018 WY 12, ¶ 40, 409 P.3d 1236, 1248 (Wyo. 2018) (quoting *Triplett v. State*, 2017 WY 148, ¶ 23, 406 P.3d 1257, 1262 (Wyo. 2017)).

*Matter of LDB*, 2019 WY 127, ¶ 43, 454 P.3d 908, 921 (Wyo. 2019) (quoting *Sparks v. State*, 2019 WY 50, ¶ 34, 440 P.3d 1095, 1106 (Wyo. 2019)).

[¶59]   The district court found Mr. Linklater's testimony to be admissible under two exceptions to the hearsay rule, Rules 804(b)(3) and (b)(6), and also under the exclusion from the definition of hearsay found at Rule 801(d)(2)(D).  With respect to the two exceptions under Rule 804, both required a finding that the witness was unavailable to testify in person.  Because that finding is a threshold requirement of Rule 804, we will begin our review there.  *See Young v. HAC, LLC*, 2001 WY 50, ¶ 9, 24 P.3d 1142, 1145 (Wyo. 2001) ("We will not determine if the substantive requirements of W.R.E. 804(b) were met, unless the threshold eligibility of the unavailability request is demonstrated.").  We will then turn to the admissibility of the testimony under the rules on which the court based its determination, and Plaintiffs' claim that the admission of Mr. Linklater's testimony violated their due process rights because they had no opportunity to cross-examine him.[11]

---

[11] On appeal, GSTC argues that Mr. Linklater's testimony was properly admitted under W.R.E. 801(d)(2)(E) as a statement of a co-conspirator.  It did not argue this to the district court, and we will not

## 1.    Availability of Mr. Linklater

[¶60]  "The determination of whether a witness is unavailable is vested in the sound discretion of the trial court and we will not overturn its determination absent a showing of an abuse of discretion." *Farmer v. State*, 2005 WY 162, ¶ 14, 124 P.3d 699, 705 (Wyo. 2005).  Under the circumstances here, unavailable means that the witness "is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means."  W.R.E. 804(a)(5).  We have interpreted this to require as follows:

> ". . . Assuming that the declarant cannot be subpoenaed to testify at trial, he still does not satisfy the unavailability criteria of Rule 804(a)(5) if his presence can be obtained by 'other reasonable means.' In civil litigation, it should be necessary for a party invoking one of the exceptions in Rule 804(b) to represent to the court that it communicated with the declarant or tried to do so in an effort to secure his voluntary attendance at trial."

*Williams v. Collins Commc'ns, Inc.*, 720 P.2d 880, 887 (Wyo. 1986) (quoting 4 Louisell and Mueller, *Federal Evidence* § 486, pp. 1055-56 (1980)).

[¶61]  We have also said, however, that Rule 804(a)(5) "limit[s] the obligation of the proponent to attempt to secure his live testimony where efforts . . . are likely to be unproductive or too costly in the light of circumstances." *Williams*, 720 P.2d at 888.  The lengths to which the proponent of the evidence is required to proceed is a question of reasonableness, and the proponent is not required to engage in futile acts to procure a witness. *Farmer*, ¶ 14, 124 P.3d at 705; *see also Williams*, 720 P.2d at 889 ("Futile acts are not required . . . .") (quoting *Grable v. State*, 649 P.2d 663 (Wyo. 1982), *overruled on other grounds by Vlahos v. State*, 2003 WY 103, ¶ 35, 75 P.3d 628, 637 (Wyo. 2003)).

[¶62]  The court found that Mr. Linklater was unavailable because "[h]e is not somebody that [GSTC] can get to appear in person in these proceedings."  We find nothing unreasonable in this conclusion.

---

consider it for the first time on appeal. *Barrowes v. State*, 2019 WY 8, ¶ 21, 432 P.3d 1261, 1267 (Wyo. 2019) ("[W]e do not consider new arguments on appeal.") (citing *Davis*, ¶ 32, 415 P.3d at 678). Additionally, we note that Rule 801(d)(2)(E) requires that the proffered statement be one that was made during the course and in furtherance of the conspiracy.  It is difficult to see how Mr. Linklater's trial testimony could be considered such a statement. *See* 2 *McCormick on Evidence* § 259 (8th ed. Jan. 2020 update) ("The requirement that the statement be made 'during . . . the conspiracy' calls for exclusion of admissions and confessions made after the termination of the conspiracy, which generally is held to occur with the achievement or failure of its primary objectives.").

[¶63] First, as a citizen and resident of Australia, Mr. Linklater was beyond reach of the court's subpoena power. *See* W.R.C.P. 45(b)(1) ("A subpoena may be served . . . at any place within the State of Wyoming."); 2 *McCormick on Evidence* § 253 (8th ed. Jan. 2020 update) ("[I]n state courts process in civil cases will usually not be effective beyond state boundaries . . . ."); *Richardson v. Newman*, 439 S.W.3d 538, 546 (Tex. Ct. App. 2014) (compulsory process unavailable for witnesses living in other countries); *Commonwealth v. Hunt*, 647 N.E.2d 433, 436 (Mass. Ct. App. 1995) ("[A] State of the United States has no authority to compel a resident of a foreign country to attend a trial here.") (citing *Mancusi v. Stubbs*, 408 U.S. 204, 212, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)); *Cordovi v. State*, 492 A.2d 1328, 1332 (Md. Ct. App. 1985) (witness in foreign nation beyond reach of state process). Second, while GSTC made no showing that it attempted to secure Mr. Linklater's voluntary presence, we believe it is fair and reasonable to assume that such an attempt would have been futile. Mr. Linklater's family trust was one of the adverse parties in *GSTC I*, and it is difficult to imagine that upon request, he would have voluntarily agreed to testify in separate litigation. We therefore find no abuse of discretion in the district court's conclusion that Mr. Linklater was unavailable.

## 2. Rule 804(b)(3): Statement Against Interest

[¶64] Rule 804(b)(3) allows for the admission of hearsay if the declarant is unavailable and the statement made was against the declarant's interest. It provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

W.R.E. 804(b)(3).

[¶65] Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Johnson v. State*, 930 P.2d 358, 362 (Wyo. 1996) (quoting *Williamson v. United States*, 512 U.S. 594, 600-01, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994)); *see also Young*, ¶ 12, 24 P.3d at 1146 ("Our review indicates that the record supports the trial court's view that nearly all of the sworn statement, which is well over twenty-five pages, primarily consists of statements that are not statements against interest, but are inadmissible narrative."). We have thus held that in determining the admissibility of evidence under Rule 804(b)(3), a

court must consider each statement individually to ascertain whether it is a statement against the declarant's interest. *Young*, ¶ 13, 24 P.3d at 1146; *Johnson*, 930 P.2d at 363. "[T]his can be a fact-intensive inquiry, which would require careful examination of all the circumstances surrounding the . . . activity involved." *Johnson*, 930 P.2d at 363 (quoting *Williamson*, 512 U.S. at 604, 114 S.Ct. at 2437).

[¶66] In this case, the district court did not evaluate Mr. Linklater's testimony in this fashion. It instead made a broad ruling that "much of what Mr. Linklater had to say was contrary to his pecuniary and proprietary interest, and tended to subject him to civil or criminal liability." Although the court then went through the testimony section by section to consider non-hearsay objections, it offered no clarification of its hearsay ruling, even when Plaintiffs' counsel asked which exception the court was applying.

> [PLAINTIFFS' COUNSEL]: I recognize that this is coming in under the catch-all exceptions.
>
> THE COURT: Recognizing it's coming in under the Court's prior rulings and that you have maintained an ongoing objection thereto.

[¶67] The only hearsay objections the district court considered in its closer review were Plaintiffs' hearsay-within-hearsay objections. For example, Plaintiffs asserted a hearsay objection to any reference in Mr. Linklater's testimony to emails written by third parties. The court overruled the objection because it concluded that the emails in question were not offered for the truth of the matter asserted, but it did not otherwise expand on its basis for admitting the testimony.[12]

---

[12] Because Plaintiffs' generally claim on appeal that Mr. Linklater's testimony contained hearsay within hearsay, and to provide guidance on remand, we address as an example the testimony that drew the objection from Plaintiffs' counsel in this particular instance. The testimony referenced an email from Campbell Smith to Mr. Linklater:

> Q.      And then over on the next following page, it goes on to say, and this is from Cam Smith to you, "Graeme, I think you need to tell John that he needs to resolve the loan note problem by reaching an agreement in the Deed of Variation, and cite the legal advice that he has received in Australia." So how did Cam Smith learn about advice that Mr. Pope was getting in Australia?
>
> A.      I'm unsure.
>
> Q.      Did he learn it from you?
>
> A.      I'm – I don't know.

[¶68]   The district court's blanket ruling on the admissibility of Mr. Linklater's testimony under Rule 804(b)(3) was contrary to our precedent requiring that each statement be evaluated for admissibility.  If GSTC again offers Mr. Linklater's testimony on remand, the court must make specific findings regarding which portions it finds admissible as statements against interest.

---

> Q.      And then he further says, "I would not want you to launch your demerger solution until after he has signed the variance, so that we can apply pressure for him to accept your solution." That's what he wrote to you, right?
>
> A.      Correct.
>
> Q.      And you complied with his instruction?
>
> A.      Correct.

We agree with the district court that the referenced email, if otherwise admissible, is not hearsay. The court ruled that the email was "plainly not used for the truth of the matter asserted. It's used to explain Mr. Linklater's actions and his course of conduct in response thereto."  This is consistent with what we have previously said concerning these types of statements.

> As one authority explains:
>
>> A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge or motive, or to show the information which X had as bearing on the reasonableness, good faith, or voluntariness of subsequent conduct, or on the anxiety produced.
>
> 2 *McCormick on Evidence* § 249 (7th ed.) (June 2016 update) (footnotes omitted); *see also Paden v. Paden*, 2017 WY 118, ¶ 25, 403 P.3d 135, 143 (Wyo. 2017) (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:18 (4th ed. June 2017 update)) (upholding admissibility of letters that were not admitted to prove the truth of what was said, but rather as "'verbal acts' in the sense that they have legal significance independent of their assertive quality . . . ."); *King v. Cowboy Dodge, Inc.*, 2015 WY 129, ¶ 11 n.6, 357 P.3d 755, 758 n.6 (Wyo. 2015) (quoting 4 Mueller & Kirkpatrick, *Federal Evidence* § 8:18) (finding statement employee attributed to his physician to be a "verbal act" rather than hearsay because it was offered not for the truth of the matter asserted but as "words of independent legal significance").

*Pioneer Homestead Apartments III v. Sargent Eng'rs, Inc.*, 2018 WY 80, ¶ 27 n.5, 421 P.3d 1074, 1081 n.5 (Wyo. 2018).

26

### 3. Rule 804(b)(6): Catch-All Exception

[¶69] Rule 804(b)(6) is one of the catch-all exceptions to hearsay and allows for its admission if the declarant is unavailable, and if certain findings are made. It provides as follows:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

W.R.E. 804(b)(6).

[¶70] Rule 804(b)(6) must be used cautiously and only in exceptional cases. *Bruce*, ¶ 44, 346 P.3d at 923 (citing *Williams*, 720 P.2d at 888). It requires circumstantial guarantees of trustworthiness that may be established "either through other corroborating evidence or by considering the motivation and/or behavior pattern of the declarant." *Young*, ¶ 15, 24 P.3d at 1146-47 (quoting *Johnson*, 930 P.2d at 366). We have also said:

> If the trial court chooses to rely on this exception to allow the admission of hearsay evidence at trial, it must make a record by appropriate statements of rationale, or findings of fact and conclusions of law to support its discretionary decision.

*English v. State*, 982 P.2d 139, 144 (Wyo. 1999) (quoting *Betzle v. State*, 847 P.2d 1010, 1021 (Wyo. 1993)).

[¶71] Here again, the district court made no findings of fact to support its determination that Mr. Linklater's testimony was admissible under the Rule 804(b)(6) catch-all exception. It instead made only conclusory findings that the rule's requirements were met. If GSTC offers Mr. Linklater's testimony on remand, the court must make specific findings of fact to support any determination that the testimony is admissible under Rule 804(b)(6). *See*,

*e.g.*, *Johnson*, 930 P.2d at 366-68 (citing factors to consider in evaluating admissibility under Rule 804(b)(6) and upholding trial court's ruling based on specific findings).

## 4. Rule 801(d)(2)(D): Non-Hearsay Statement of Agent

[¶72] Rule 801(d)(2)(D) excludes a statement that "is offered against a party and is . . . a statement by his agent . . . concerning a matter within the scope of his agency . . . , made during the existence of the relationship" from the definition of hearsay  W.R.E. 801(d)(2)(D).  The determination of whether a declarant is a party's agent is governed by the substantive rules of agency.  *See Boren v. Sable*, 887 F.2d 1032, 1038 (10th Cir. 1989) (applying common law definition of agency to determine admissibility under F.R.E. 801(d)(2)(D)); 4 Mueller & Kirkpatrick, *Federal Evidence* § 8:54 (4th ed. May 2020 update) ("[P]robably the framers of the exception meant to exclude statements by persons who are not agents as a matter of substantive law[.]") (footnote omitted).[13]

[¶73] The manner in which evidence is admitted under Rule 801(d)(2)(D) has been described as follows:

> The party offering evidence of the alleged agent's admission must first prove that the declarant is an agent of the adverse party and the scope of that agency. This may be done directly by the testimony of the asserted agent, by anyone who knows, or by circumstantial evidence. Traditionally, courts held that evidence of the purported agent's past declarations asserting the agency could not be considered in deciding whether an agency relationship existed. By contrast, the Federal Rule permits such statements to be used by the trial judge in deciding the agency issue but states explicitly that standing alone they are insufficient to establish it. If the preliminary fact of the declarant's agency is disputed, the question is one to be decided by the court under Rule 104(a).

2 *McCormick on Evidence* § 259 (footnotes omitted).

[¶74] In keeping with the traditional view noted above, two Wyoming cases have held that a purported agent's past declarations may not be considered in determining whether the required agency relationship exists to support admissibility.  *See Hatch Bros. Co. v. Black*,  25 Wyo. 109, 165 P. 518, 520 (1917) ("Before statements or declarations of an alleged agent are competent and admissible in evidence against a principal, the agency

---

[13] "In Wyoming, 'a relationship of agency is established when two parties agree that one, the agent, shall act on behalf of and subject to the control of the other, the principal.'" *Redco Constr. v. Profile Prop., LLC*, 2012 WY 24, ¶ 38, 271 P.3d 408, 418 (Wyo. 2012) (quoting *Maverick Motorsports Group, LLC v. Wyo. Dep't of Revenue*, 2011 WY 76, ¶ 28, 253 P.3d 125, 133 (Wyo. 2011)).

must be established; and it is a familiar rule of evidence that agency cannot be established by the declarations of the alleged agent."); *Henderson v. Coleman*, 19 Wyo. 183, 115 P. 439, 445 (1911) (same). Plaintiffs contend that Mr. Linklater's testimony is the only evidence of an agency relationship between them, and that his testimony is therefore inadmissible under the rule announced in *Hatch Bros.* Because it predated our adoption of W.R.E.104(a), we find Plaintiffs' reliance on *Hatch Bros.* misplaced.[14]

[¶75] The rule relied upon in *Henderson* and *Hatch* is essentially a restriction on bootstrapping, and we have applied a similar rule in determining the admissibility of evidence under Rule 801(d)(2)(E). *See Jandro v. State*, 781 P.2d 512, 522 (Wyo. 1989) (holding that statements of co-conspirators cannot be considered in determining their admissibility because that would be bootstrapping). In *Bourjaily v. United States*, the United States Supreme Court revisited this restriction in light of F.R.E. 104(a), which, like W.R.E. 104(a), provides that in deciding preliminary questions of admissibility, a court is not bound by rules of evidence, except those on privilege. 483 U.S. 171, 177-78, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987). The Court concluded that the bootstrapping restriction did not survive adoption of federal rules of evidence.

> [The cases restricting bootstrapping], however, were decided before Congress enacted the Federal Rules of Evidence in 1975. These Rules now govern the treatment of evidentiary questions in federal courts. Rule 104(a) provides: "Preliminary questions concerning ... the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence except those with respect to privileges." Similarly, Rule 1101(d)(1) states that the Rules of Evidence (other than with respect to privileges) shall not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104." The question thus presented is whether any aspect of [the] bootstrapping rule remains viable after the enactment of the Federal Rules of Evidence.

> Petitioner concedes that Rule 104, on its face, appears to allow the court to make the preliminary factual determinations relevant to Rule 801(d)(2)(E) by considering any evidence it wishes, unhindered by considerations of admissibility. . . . That would seem to many to be the end of

---

[14] Rule 104(a) provides, "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). ***In making its determination it is not bound by the rules of evidence except those with respect to privileges***." W.R.E. 104(a) (emphasis added).

the matter. Congress has decided that courts may consider hearsay in making these factual determinations. Out-of-court statements made by anyone, including putative co-conspirators, are often hearsay. Even if they are, they may be considered, . . . the bootstrapping rule notwithstanding.

*Bourjaily*, 483 U.S. at 177-78, 107 S.Ct. at 2780.

[¶76]   The Court thus concluded that "in making a preliminary factual determination under Rule 801(d)(2)(E), [a court] may examine the hearsay statements sought to be admitted." *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781.  Given the similarity of W.R.E. 104(a) and its federal counterpart, we find the Court's reasoning persuasive and equally applicable under our rules.  *See Mgmt. Nominees, Inc. v. Skowronska*, 2019 WY 105, ¶ 31 n.10, 450 P.3d 672, 682 n.10 (Wyo. 2019) ("Where our rules are sufficiently similar to federal rules, we consider federal decisions interpreting them persuasive.") (quoting *Baker v. Speaks*, 2013 WY 24, ¶ 33, 295 P.3d 847, 855 (Wyo. 2013)).

[¶77]   Additionally, it has been recognized that the same reasoning and holding extends to the preliminary factual determinations required for admitting the statements of an agent. *See DCS Sanitation Mgmt, Inc. v. Occupational Safety and Health Review Comm'n*, 82 F.3d 812, 815 (8th Cir. 1996) (*Bourjaily* holding applies to preliminary findings for admissibility under F.R.E. 801(d)(2)(D)) (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458 (9th Cir. 1990)); *see also* F.R.E. 801(d) (Advisory Comm. Note 1997) (citing *Bourjaily* and finding "it appropriate to treat analogously preliminary questions relating to the declarant's authority under subdivision (C), and the agency or employment relationship and scope thereof under subdivision (D)"). We therefore conclude that when determining the admissibility of a hearsay statement under Rule 801(d)(2)(D), a court may consider the offered hearsay statement itself in deciding the preliminary questions of whether an agency relationship exists and the scope of that relationship.

[¶78]   In *Bourjaily*, the Court did not need to, and so did not, address the question of whether a preliminary determination of admissibility could be based solely on the hearsay statement, or whether it required independent corroboration.  483 U.S. at 181, 107 S.Ct. at 2781.  In 1997, however, F.R.E. 801(d)(2) was amended to add that "[t]he statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E)."  The rules advisory committee explained the amendment as follows:

> [T]he amendment resolves an issue on which the Court had reserved decision. It provides that the contents of the declarant's statement do not alone suffice to establish a

conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question. ***This amendment is in accordance with existing practice. Every court of appeals that has resolved this issue requires some evidence in addition to the contents of the statement.*** *See*, *e.g.*, *United States v. Beckham*, 968 F.2d 47, 51 (D.C.Cir. 1992); *United States v. Sepulveda*, 15 F.3d 1161, 1181-82 (1st Cir. 1993), *cert. denied*, 114 S.Ct. 2714 (1994); *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir.), *cert. denied*, 488 U.S. 821 (1988); *United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir.), *cert. denied*, 115 S.Ct. 152 (1994); *United States v. Zambrana*, 841 F.2d 1320, 1344-45 (7th Cir. 1988); *United States v. Silverman*, 861 F.2d 571, 577 (9th Cir. 1988); *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988); *United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir. 1987), *cert. denied*, 485 U.S. 1013 (1988); *United States v. Byrom*, 910 F.2d 725, 736 (11th Cir. 1990).

F.R.E. 801(d) (Advisory Comm. Note 1997) (emphasis added).

[¶79] Although W.R.E. 801(d)(2) has not been similarly amended, it is apparent from the advisory committee comment that the federal amendment merely codified the then-prevailing practice, which was to permit consideration of the out-of-court statement in determining its admissibility, but also to require at least some independent corroboration of the preliminary facts. *See also DCS Sanitation Mgmt.*, 82 F.3d at 815 (fact of agency found in proffered statements along with logical inferences drawn from independent evidence); *United States v. Harris*, 914 F.2d 927, 932 (7th Cir. 1990) (acknowledging that preliminary finding of agency relationship may not be based entirely on out-of-court statement and looking to independent evidence to corroborate).

[¶80] W.R.E. 801(d)(2)(D) is similar to the federal rule, and we therefore adopt the same approach and hold that a court may consider the proffered statement in making its preliminary determination of admissibility, but that its determination must also be corroborated with evidence independent of the statement. *See Mgmt. Nominees*, ¶ 31 n.10, 450 P.3d at 682 n.10 ("Where our rules are sufficiently similar to federal rules, we consider federal decisions interpreting them persuasive.").

[¶81] In the interest of providing further guidance on remand, we also address the quantum of proof required in making a preliminary finding of admissibility under Rule

31

104(a). In *Bourjaily*, the Supreme Court held that the offering party must prove the preliminary facts by a preponderance of the evidence. 483 U.S. at 176, 107 S.Ct. at 2779. We have rejected that standard, however, and instead require that the preliminary facts be demonstrated by prima facie evidence. *Callen v. State*, 2008 WY 107, ¶ 7, 192 P.3d 137, 142 (Wyo. 2008) (quoting *Gilliam v. State*, 890 P.2d 1104, 1107 (Wyo.1995)). Prima facie evidence is evidence that is sufficient "to permit the trial court to reasonably infer [the existence of an agency relationship and its scope]." *Burke v. State*, 746 P.2d 852, 855 (Wyo. 1987) (quoting *Dorador v. State*, 711 P.2d 417, 418-19 (Wyo. 1985)). As to the corroborating evidence, we agree with the following:

> "Some" independent evidence is not merely a scintilla, but rather enough to rebut the presumed unreliability of hearsay. Admissibility of the hearsay, therefore, hinges on whether some sufficiently corroborating evidence exists which overcomes the suspected unreliability of out-of-court statements. *United States v. Silverman*, 861 F.2d 571, 579 (9th Cir. 1988).

*United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994).

[¶82] On remand, if GSTC again seeks to admit Mr. Linklater's testimony under Rule 801(d)(2)(D), the district court must determine whether GSTC has presented prima facie evidence that the asserted agency relationship exists and the scope of that relationship, based on evidence consistent with our holding herein. That will be a finding the court must make under W.R.E. 104(a), not a finding for the jury to make. The court must make the required finding before admitting the testimony under Rule 801(d)(2)(D). *See Bourjaily*, 483 U.S. at 175, 107 S.Ct. at 2778 ("Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule."); *but see Jandro*, 781 P.2d at 522 (noting that preferred approach is to establish admissibility before evidence is admitted but holding it is not reversible error to do otherwise if record contains evidence supporting admissibility).

## C.    Plaintiffs' Due Process Claim

[¶83] Plaintiffs contend that they had a due process right to cross-examine witnesses in this proceeding, and that the admission of the Linklater testimony violated that right. Plaintiffs are correct that a party to a civil proceeding generally has a due process right to cross-examine witnesses. *Walker v. Karpan*, 726 P.2d 82, 86 (Wyo. 1986). That right, however, is not necessarily violated by the admission of an out-of-court statement. As one court explained:

> "A civil litigant's right to due process of law includes the right to cross-examine witnesses and to have an opportunity for rebuttal." *Aspen Props. Co. v. Preble*, 780 P.2d 57, 58 (Colo. App. 1989). Hearsay is an out of court statement offered into evidence for the truth of the matter asserted. CRE 801. It is inadmissible unless an exception applies. CRE 802. But where an exception applies, in civil proceedings "[d]ue process requires only that the evidence be reliable, and reliability can be inferred without more in a case where evidence falls within a firmly rooted exception to the hearsay rule." *Cabinet for Health & Family Servs. v. A.G.G.*, 190 S.W.3d 338, 346 (Ky. 2006) (internal quotation marks omitted).

*People v. Shifrin*, 342 P.3d 506, 517 (Colo. Ct. App. 2014).

[¶84]  At this point, we cannot know if Mr. Linklater's testimony will be admitted on remand and if it is, under which rule it will be admitted.  It would therefore be premature for us to rule on this claim.[15]

## III.  Plaintiffs' Claims of Error in Jury Instructions

[¶85]  Plaintiffs contend that the district court improperly instructed the jury to determine whether GSTC's defaults were material and whether Plaintiffs had waived those defaults. It also argues that the court improperly instructed the jury on the law of agency.  Plaintiffs' concerns with these instructions may or may not arise again if there is another trial, and if they do, they will likely appear in a different context or form. Since any discussion of them would therefore be advisory, we will not address these issues at this time.

## IV.  Plaintiffs' Sufficiency of the Evidence Claim

[¶86]  Plaintiffs contend that when they called defaults on their notes with GSTC, they were exercising their rights under the notes.  They further contend that such an exercise of their rights may not form the basis for a finding that they violated the implied covenant of good faith and fair dealing and that the jury's finding otherwise was thus unsupported by the evidence.   We conclude that the district court's errors in dismissing GSTC's counterclaims and in ruling on the admissibility of the Linklater testimony make it impossible for us to evaluate the evidence in support of GSTC's assertion of a breach of

---

[15] Should the Linklater testimony, or any part of it, be offered and admitted again on remand, we expect that Plaintiffs will make offers of proof concerning their need for cross-examination and their objections to the same. *See Van Fleet v. Guyette*, 2020 WY 78, ¶ 28, 466 P.3d 812, 821 (Wyo. 2020) (Court has no realistic means of evaluating prejudice without an offer of proof) (quoting *Matter of LDB*, ¶ 48, 454 P.3d at 922).

the implied covenant, and any ruling from this Court at this point would therefore be premature.

[¶87]  The implied covenant of good faith requires that neither party commit an act that would injure or impair the rights of the other party to receive the benefit of their agreement. *Grommet v. Newman*, 2009 WY 150, ¶ 25, 220 P.3d 795, 804 (Wyo. 2009) (citing *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 653-54 (Wyo. 2001)).  "[C]ompliance requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party."  *Id.*  While Plaintiffs are correct that exercising a contractual right is not in itself a basis for a claim under the covenant, that rule is qualified.  We have said that "[i]n the absence [of evidence] of self dealing, breach of 'community standards of decency, fairness, and reasonableness,' the exercise of contract rights alone will not be considered a breach of the covenant."  *Id.*  We have also said that "[t]he purpose, intentions, and expectations of the parties should be determined by considering the contract language *and* the course of dealings between and conduct of the parties."  *Id.* (emphasis in original).

[¶88]  Where the evidence is disputed as to whether a party's conduct went beyond the exercise of contract rights and amounted to self-dealing or a violation of community standards of decency, fairness or reasonableness, the issue is one for determination by the fact finder.  *City of Gillette v. Hladky*, 2008 WY 134, ¶ 32, 196 P.3d 184, 197 (Wyo. 2008) (citing *Scherer Constr.*, ¶ 19, 18 P.3d at 654).  At this point, two factors complicate any effort to determine whether the evidence can support a finding that Plaintiffs' conduct went beyond the exercise of its contract rights.  First, we do not yet know what, if any, of the Linklater testimony is admissible.  Second, GSTC was foreclosed from presenting evidence on its counterclaims, which evidence may also have been relevant to its affirmative defense.  In cases in which a party has been foreclosed from presenting evidence central to its theory of the case, we have said:

> [A] litigant is usually entitled to a remand and a new trial if he was unfairly restricted in developing and presenting his theory of the case. *Capshaw v. WERCS*, 2001 WY 68, ¶ 10, 28 P.3d 855, 858 (Wyo.2001); *Stauffer Chem. Co. v. Curry*, 778 P.2d 1083, 1100 (Wyo.1989). When the issue is the exclusion of evidence, we generally prefer to allow a party his "day in court" to resolve a controversy on its merits. *Winterholler* [*v. Zolessi*], 989 P.2d [621,] 628 [(Wyo.1999)].

*Glenn v. Union Pacific R.R. Co.*, 2011 WY 126, ¶ 26, 262 P.3d 177, 190 (Wyo. 2011) (quoting *Schmid v. Schmid*, 2007 WY 148, ¶ 21, 166 P.3d 1285, 1291 (Wyo. 2007)).

[¶89]  For these reasons, it is premature for us to rule on Plaintiffs' sufficiency of the evidence claim, and we decline to do so.

34

## V. GSTC's Cross-Appeal from Entry of Partial Summary Judgment

[¶90] GSTC claims that the district court erred in ruling on summary judgment that there was no mutual mistake relating to the terms of the Jontra and ACE finance notes. Plaintiffs respond that GSTC failed to properly perfect its cross-appeal on this issue because it did not identify the partial summary judgment order in its notice of appeal and cross-appeal. They further argue that even if GSTC did perfect its appeal, it has not supported its claim with cogent argument.

[¶91] Because we agree with Plaintiffs that GSTC has not supported its claim with cogent argument, we need not address the question of whether it properly perfected its cross appeal from the order granting partial summary judgment. GSTC cites no authority relevant to its claim of mutual mistake, and its only citation to the record is to evidence submitted at trial, not evidence submitted to the district court in opposition to Plaintiffs' summary judgment motion. *See Harrison v. State*, 2020 WY 43, ¶ 2, 460 P.3d 260, 261 (Wyo. 2020) (Court will not consider arguments unsupported by cogent argument and cites to record and relevant authority); *O'Hare v. Hulme*, 2020 WY 31, ¶ 17, 458 P.3d 1225, 1233 (Wyo. 2020) ("Since the district court did not have [documents filed after summary judgment] before it, we cannot consider such documents in our review since we must examine the judgment in the same light as the district court and use the same materials.") (quoting *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808, 812 (Wyo. 1986)). We therefore will not consider GSTC's claim of error related to the entry of partial summary judgment.

## VI. Remaining Issues

[¶92] Because we are reversing and remanding, we need not consider Plaintiffs' cumulative error claim. Nor will we consider its claim that the district court admitted evidence in violation of its limine orders, or GSTC's claim on cross-appeal that the court erred in excluding testimony of a conspiracy involving Plaintiffs, Mr. Mactaggart, Mr. Linklater and others. The court will no doubt revisit liminal orders in light of GSTC's counterclaims, so it would again be premature to address any claims regarding the relevance of evidence.

[¶93] We reverse and remand for proceedings consistent with this opinion.